UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NOLAN C. DAVIS, SR.                                        CIVIL ACTION

VERSUS                                                          NO.  09-2784

MARLIN GUSMAN ET AL.                                 SECTION "I" (2)

## REPORT AND RECOMMENDATION;
## ORDER ON MOTIONS TO AMEND

Plaintiff, Nolan C. Davis, Sr., is a prisoner currently incarcerated in the Orleans

Parish Prison system ("OPP").  He filed this complaint pro se and in forma pauperis

pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin N. Gusman,

Dr. Gore and Dr. Ham.  Davis alleges that he has been provided with inadequate medical

treatment for his eye.  Plaintiff seeks declaratory and injunctive relief and compensatory

and punitive damages.  Record Doc. No. 1, Complaint at ¶ IV and V.

On April 23, 2009, I conducted a telephone conference in this matter.

Participating were plaintiff pro se and Monique Morial, counsel for defendants.  Plaintiff

was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179

(5th Cir. 1985), and its progeny.

## THE RECORD

Davis testified that he is currently incarcerated as a pretrial detainee in OPP, where

he has been held since his arrest on October 28, 2008 on charges of aggravated burglary

and simple burglary. At the time of the conference, he said his trial on these charges was scheduled to occur on April 29, 2009.

Davis confirmed that his claim in this case is based exclusively on alleged inadequate treatment that he has received in OPP for a cataract in his right eye. He confirmed that the medical records he received pursuant to my order, Record Doc. Nos. 8 and 34, are accurate, but he stated that they were not complete because they did not include records concerning "the rest of the medical treatment that I was receiving."

Plaintiff stated that he advised jail officials about his eye problem during the initial medical screening process that occurred at OPP shortly after his arrest. He testified that he told the screener he had blurry vision in his right eye, but no one had diagnosed his cataract problem before his arrest. He stated that he had not seen an eye doctor since 2006, but he could not recall the doctor's name.

Davis testified that when he was arrested on October 28, 2008, he advised the medical screeners at OPP not only about his blurry vision but also that he had three staples in a laceration in his head and a fractured nose, and the nurse documented it. He said that a day later he was placed in the general population area of the jail and he filled out a sick call request concerning his blurry vision and hand numbness. He confirmed the reference in the medical records that on October 30, 2008, he was taken to the hospital for attention to the staples in his head, and he confirmed that he makes no

complaint in this case about his medical treatment for the head laceration. He stated that when he was examined at the hospital for the head laceration, nothing was done for his eye.

Plaintiff stated that he again requested treatment for his eye, this time to Nurse Favis. He testified that he heard nothing from the nurse, until he asked again about it and submitted another sick call request. When he received no medical attention, he submitted another medical request and filed a grievance concerning it. He said he repeated this process.

Davis confirmed the reference in the medical records indicating that the first time he received a referral from medical personnel at OPP to an eye specialist at the hospital eye clinic was December 31, 2008, two months after his arrest and the commencement of his requests for treatment of his eye condition. Thus, he explained that his initial complaint in this case is that defendants unreasonably delayed in treating his eye condition. He said that the problems he suffered with his eye during this initial two-month period of delay included blurry vision, sensitivity to light, eye strain and headaches. He stated that he did not recall having these problems before his arrest, but "if I did, I didn't pay too much attention to it, and most of the time I wear shades, so I don't recall having sensitivity to light."

Davis confirmed the notation in the medical records that he was not taken from OPP to the eye clinic at the hospital based upon the earlier referral from OPP until February 25, 2009. He stated that before he went to the hospital, Dr. DiLeo at OPP had examined his eye on or about December 27, 2008, and Dr. DiLeo opined that "I probably have a cataract that seems like it's covering the whole pupil." He stated that when he was taken to the hospital eye clinic on February 25th, the doctors at the hospital actually diagnosed his cataract condition. Davis said that on that date the hospital doctor, Dr. Burrow, concluded that he should schedule surgery to extract the cataract and give Davis a new pupil lens. Davis said the doctor told him that he would experience headaches and sensitivity to light until the cataract was removed and that all he could give him was Motrin for the headaches. He said the doctor advised him that he did not think he could give him anything to shade his eye from light because the contraband rules inside the jail probably would prohibit it. Davis testified that initially he did not receive Motrin for his headaches, except that he saw Dr. Gautreaux ( in addition to Dr. DiLeo) at the jail back in December 2008, and Dr. Gautreaux also saw the eye cataract and prescribed some Ibuprofen for him, which Davis received for about a month in OPP in December 2008 and January 2009.

Davis testified that at the time of the conference he had not returned to the hospital for his cataract surgery and that the surgery was not scheduled at that time. He

confirmed, however, the reference in his medical records that, since his February 25th hospital visit, he has seen both Drs. DiLeo and Gautreaux at the jail. He testified that at one point he was in fact scheduled for cataract surgery and returned to the hospital for pre-operative procedures, probably a couple of weeks after the February 25th diagnosis, "but the anesthesiologist found that my blood pressure was a little elevated – 230 over 100-something at that time." He said the anesthesiologist was going to talk to someone about prescribing medication to get his blood pressure "a little down," since surgery was not advisable for someone with high blood pressure, so he could have his surgery "within a few days."

Davis stated that the last time his blood pressure was taken was about a week and half before the conference at the jail, at which time his blood pressure was 150 over 80. He confirmed the reference in the supplemental medical records attached as exhibits to defendant's motion for summary judgment that he is currently being provided with medication for his high blood pressure at the jail, including ateninol (sp) and uningaril (sp).

Davis acknowledged during his testimony that the opinion of doctors, generally speaking, is that someone with high blood pressure should be not be undergoing surgery. He said, "I've been on the blood pressure medication for a month." He alleged that he should be taken back to the clinic for reassessment. He testified that since his cataract

diagnosis at the hospital eye clinic on February 25th, he had been returned to the hospital eye clinic for follow-up examination once and that he has been seen by doctors at the jail concerning his eye or his blood pressure twice, first by Dr. DiLeo on March 30, 2009, and then about a week later by Dr. Gautreaux, who said his blood pressure was "pretty decent" but that Davis still needed blood pressure medication and that he would be reevaluated within another month. Davis confirmed the reference in his medical records that he is still receiving blood pressure medication at the jail and that he is taking it "religiously."

Despite his high blood pressure, Davis testified that he would "like to see," so he thought his cataract surgery was being unreasonably delayed.

Davis said he has filed a motion to amend his complaint to add Nurse Favis as a defendant in this case, Record Doc. No. 14, because he advised her about his blurry vision, but she kept telling him to submit a request, so he blames Nurse Favis for part of the delay he experienced in receiving medical care.

Prior to the Spears hearing, plaintiff filed a motion for temporary restraining order and preliminary injunction, Record Doc. No. 12, and two motions seeking leave to amend his complaint to (1) name Nurse Lakesha Favis as an additional defendant and (2) demand a jury trial. Record Doc. Nos. 14 and 28. After the hearing, plaintiff filed a Motion for Partial Summary Judgment, Record Doc. No. 38. Defendants have filed

written opposition to each of plaintiff's four (4) pending motions. Record Doc. Nos. 22, 25, 31, 36.

In addition, defendants have filed a motion for summary judgment, which argues that the facts of plaintiff's case show that plaintiff received appropriate medical care and was not subjected to deliberate indifference by defendants. Record Doc. No. 21. Plaintiff filed written responses to defendants' motion, Record Doc. Nos. 35 and 37, which I have considered together with his other written submissions in the record and his sworn testimony provided during the April 23rd hearing.

For the following reasons, **IT IS ORDERED** that plaintiff's motions to amend are denied as futile, and **IT IS RECOMMENDED** that plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and Motion for Partial Summary Judgment be denied, and that defendants' motion for summary judgment be granted. Even accepting plaintiff's testimony as true for purposes of the pending motions, the undisputed facts establish that plaintiff cannot establish a claim of unconstitutional medical care cognizable under Section 1983 as a matter of law.

# ANALYSIS

## I. STANDARDS OF REVIEW

### (A) 28 U.S.C. § 1915A Screening

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the

actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

(B)    Motion for Summary Judgment

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions

of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim.  Id. (citing Celotex, 477 U.S. at 321-23).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."  Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998).  "We do not, however, in the absence of any proof, assume that the nonmoving party could or would

prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original).

II.     MEDICAL CARE

For the reasons discussed below, it is clear from plaintiff's testimony and the verified medical records that he cannot establish a viable Section 1983 claim for inadequate medical care as a matter of law. Accordingly, defendants are entitled to summary judgment in their favor on this claim.

Davis was a pretrial detainee awaiting trial on charges of aggravated burglary and simple burglary at all relevant times about which he complains. Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that

prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id.

at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Id.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show deliberate indifference to his "serious medical

needs" to satisfy this prong.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991); <u>Mendoza</u>, 989 F.2d at 193.

Further, the plaintiff must establish that the defendant possessed a culpable state of mind.  <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson</u>, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u> at 837.  If the court finds that one of the components of the test is not met, it need not address the other component.  <u>Davis</u>, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  <u>Board of the County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997) . . . .  The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291.

In the instant case,  plaintiff's pleadings as expanded by his testimony establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue in this case.  Thus, the "deliberate indifference" standard applies and plaintiff must allege facts

sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, Davis fails completely to allege facts sufficient to establish deliberate indifference.

Initially, it cannot be concluded with certainty that Davis's cataract condition, particularly when coupled with the prudent medical judgment to defer surgery while high blood pressure is brought under control, constitutes serious risk of harm sufficient to implicate constitutional concerns. Some courts have concluded that mild cataracts or a cataract condition as to which a delay in surgical treatment results from a "difference of medical opinion" about whether surgery is necessary do not reach the level of serious medical need for purposes of constitutional analysis. See Samonte v. Bauman, 2008 WL 176462,* (9th Cir. 2008); Dunville v. Morton, 234 F.3d 1272, 2000 WL 1206653,* (7th Cir. 2000). Other courts, however, have described cataracts that require surgical treatment as a serious medical need for purposes of constitutional analysis, especially when surgery is necessary to prevent imminent blindness. See Campbell v. Fry, 896 F.2d 1366, 1990 WL 15601, *2 (4th Cir. 1990); Padichit v. Unknown Cook County Officials, 2006 WL 1897518, *2 (S.D. Ill. July 11, 2006).

In Davis's case, there is no indication that he faces imminent blindness and the medical records establish that the current delay in his surgery is based upon a medical judgment concerning his high blood pressure.

Even assuming, however, that plaintiff's cataract condition presents a serious medical need for constitutional purposes, Davis has alleged facts, confirmed by the medical records, that negate any inference of deliberate indifference by jail officials. Plaintiff's complaint as amended by his testimony shows that he has received constitutionally adequate medical care for his cataract condition while incarcerated at the jail. Davis was provided with examinations by doctors within the jail, transportation to and treatment by specialists at a hospital, medication, pre-operative examinations and ongoing monitoring of his cataract condition. It appears that the only reason his cataract surgery is currently delayed is the prudent exercise of medical judgment that he should not undergo surgery until his high blood pressure is brought under control. See Padichit, 2006 WL 1897518, *1-2 (no deliberate indifference where cataract surgery was provided within six months); Baker v. Brantley County, 832 F. Supp. 346, 352 (S.D. Ga. 1993), aff'd, 19 F.3d 37 (11th Cir. 1994) (no deliberate indifference to serious medical need of pneumonia when plaintiff was examined twice by emergency medical technician and twice by physician, and plaintiff received prescription medication); Pierre v. Gruler, No. 3:06-cv-45-J-32JRK, 2009 WL 383352, at *10 (M.D. Fla. Feb. 16, 2009) (jail physician was not deliberately indifferent to plaintiff's shoulder injury resulting from fall to the ground after being shot with a taser gun, when plaintiff "received extensive and

reasonable medical treatment by" physician and other medical providers at the jail and was "promptly referred" to an orthopedic surgeon.).

Although Davis has alleged delay in receiving medical care and has expressed dissatisfaction with the extent or effectiveness of his treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted).  No such showing has been made on the current record.

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298.  No such showing can be made when the obvious reason for the current delay in plaintiff's cataract surgery is the exercise of medical judgment in connection with his high blood pressure.

Contentions like Davis's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Rowe v. Norris, 198 Fed. Appx. 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

For all of the foregoing reasons, plaintiff's complaints in this case about his medical care fail to state a claim for relief under Section 1983, and defendants are entitled to summary judgment on this claim.

III.  **PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

For the reasons set out above recommending that defendants' Motion for Summary Judgment be granted, it is further recommended that plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, Record Doc. No. 12, and Motion for Partial Summary Judgment, Record Doc. No. 38, be denied.

IV.  **ORDER ON MOTIONS TO AMEND**

Plaintiff has filed two motions seeking leave to amend his complaint to (1) name Nurse Lakesha Favis as an additional defendant and (2) demand a jury trial.  Record Doc. Nos. 14 and 28.

The policy of the Federal Rules of Civil Procedure is liberal in favor of permitting amendment of pleadings. Leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and the Rule evinces a bias in favor of granting leave to amend.  Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial. Stripling v. Jordan Prod. Co., 234 F.3d 863, 872 (5th Cir. 2000) (quotations omitted) (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994); Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co., 195 F.3d 765, 770 (5th Cir. 1999); Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597-98 (5th Cir. 1981)).  Thus, leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P.

15(a), but "is by no means automatic." <u>Wimm v. Jack Eckerd Corp.</u>, 3 F.3d 137, 139 (5th Cir. 1993) (quotation omitted). Relevant factors to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." <u>Id.</u>

"It is within the district court's discretion to deny a motion to amend if it is futile." <u>Stripling v. Jordan Prod. Co.</u>, 234 F.3d 863, 872-73 (5th Cir. 2000) (citation omitted). Futility in this context means "that the amended complaint would fail to state a claim upon which relief could be granted. . . . [Thus,] to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." <u>Id.</u> at 873 (quotations and citations omitted). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' 'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" <u>In Re Katrina Canal Breaches Litig.</u>, 495 F.3d at 205 (quoting <u>Bell Atl. Corp.</u>, 127 S. Ct. at 1974, 1965) (footnote omitted).

Davis testified that he seeks to add Nurse Favis as a defendant in this case because he blames Nurse Favis for part of the delay he experienced in receiving medical care. As discussed fully in the foregoing recommendation, Davis's claims concerning delays

in his medical care advance a legally frivolous argument, fail to state a claim for relief under Section 1983 and any amendment to add Nurse Favis as a defendant would therefore be futile.  In addition, for the reasons set out above, plaintiff's second motion seeking to amend his complaint to add a jury demand is moot.  Accordingly, **IT IS HEREBY ORDERED** that plaintiff's motion to amend to add a defendant is DENIED, Record Doc. No. 14, and his motion to amend to add a jury demand is DISMISSED AS MOOT.  Record Doc. No. 28.

## RECOMMENDATION

**IT IS RECOMMENDED** that defendants' motion for summary judgment, Record Doc. No. 21, be **GRANTED** and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, Record Doc. No. 12, and Motion for Partial Summary Judgment, Record Doc. No. 38, be DENIED.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this \_\_\_\_13th\_\_\_\_ day of May, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE